## J. C. HICKS & Co. *v.* DANIEL CRAM AND NATHANIEL HUTCHINSON.

A person, who suffers himself to be held out to the world as a partner in a firm, will be liable for all debts which the firm contract upon the joint credit of themselves and him; and this is especially true, when he represents himself as a partner in the firm, and that to the very persons who seek to charge him, and who gave credit to the firm mainly upon his responsibility.

A person is always estopped from denying the truth of a fact, upon the faith of which he has suffered another person to act, knowing at the time that the other's conduct was materially influenced by a reliance upon the truth of such fact. This is almost the only ground of an estoppel *in pais*.

The omission to join, in an action, one of two or more joint contractors is no ground of defence on trial; and it would not be good ground for abating the suit, even, if the person omitted were a silent partner with the other defendants, or if the fact of his liability were kept concealed from the plaintiffs by the other defendants.

Hicks et al. *v.* Cram et al.

If a witness, in a deposition, introduce his testimony by detailing a statement made by a person not a party to the suit, and then say that the party, against whom the testimony is offered, "affirmed all that the other person had said," the deposition is admissible in evidence.

Where, in an action against two, charging them as partners, evidence has been given to prove that one, who denies his liability as partner, had so held himself out as partner, as to enable the other defendant to pledge their joint credit, if he chose, evidence is admissible to prove that the latter, in the absence of the former, represented the former to be his partner, to the plaintiffs; as tending to prove that the plaintiffs relied upon the joint credit of the two, and to rebut evidence, previously introduced by the defendants, tending to prove that the plaintiffs relied upon the credit of one of the defendants and of a third person.

Hearsay, or common reputation, or the belief of the witness founded upon such a basis, is not competent evidence to prove that certain persons were partners.

INDEBITATUS ASSUMPSIT for goods sold and delivered. Plea, the general issue, and trial by the jury.

The plaintiffs claimed to recover for goods sold to the defendants in October and December, 1841, and in May, 1842. On trial, the plaintiffs, to support the issue on their part, introduced evidence tending to prove that the defendants were partners in trade, doing business at Braintree, under the firm of Cram & Hutchinson, and that the merchandize, to recover the price of which this action was brought, was purchased by the defendant Cram and by agents, duly authorized for that purpose by the defendants, on the joint credit of the defendants; and also that the defendant Hutchinson, before any of the said merchandize was delivered, held himself out and represented himself to the plaintiffs to be the partner of the defendant Cram, and that he represented to the plaintiffs that he and Cram were doing business in Braintree under the firm of Cram & Hutchinson.

The defendants introduced evidence tending to prove that Nathaniel Hutchinson was not a partner with Cram; and that he was in no way interested in the firm of Cram & Hutchinson, but that that firm consisted of the said Cram and John Hutchinson, 2d, who was the son of Nathaniel Hutchinson, and that John Hutchinson was publicly known and recognized as such partner in Brain-

tree and its vicinity, and that in December, 1841, when the second bill of goods was purchased of the plaintiffs, Cram informed the person then employed in the plaintiffs' store that said John Hutchinson was his partner.

The plaintiffs then introduced testimony tending to prove that the information, so given by Cram to the person employed in the plaintiffs' store, did not reach the plaintiffs, nor their principal salesman; and, to rebut any such presumption, they offered, among other evidence, the deposition of Henry A. Reed, who testified, that, in May, 1842, at the time the last bill of goods was purchased, Cram informed the plaintiffs that Nathaniel Hutchinson was his partner. To the admission of this deposition the defendants objected, but the court overruled the objection and admitted the deposition.

The plaintiffs also offered the deposition of John Preston, who testified that in September, 1841, he was salesman for the firm of Curtis & Merriam in Boston, and that he had before sold goods for that firm to one Howe of Braintree, who was agent for one Loomis, of said Braintree, and that at that time Howe came to the store of Curtis & Merriam, and told the witness that Loomis had sold out to the firm of Cram & Hutchinson, in Braintree, and that Nathaniel Hutchinson, one of said firm, was then in Boston, and that Cram & Hutchinson had assumed the debts of Loomis, and that this firm was much better than Loomis, as Hutchinson was a man of property; and the witness farther testified that the said Nathaniel Hutchinson was introduced to him, " and affirmed all that Howe had previously stated, and authorized the firm of Curtis & Merriam to charge all the goods, that Howe, as their agent, should purchase for Cram & Hutchinson, to Cram & Hutchinson." The defendants objected to the admission of this deposition also; but the objection was overruled by the court, and the deposition admitted.

The plaintiffs then offered the deposition of John M. Lyman, who testified, that, in 1841, and for some time previous, he lived in Braintree, and was a clerk in different stores there; that prior to October, 1841, he was informed by the said Howe that Loomis had sold out his store to Cram & Hutchinson; that Cram & Hutchinson gave him an order to purchase goods for them of the plaintiffs, in October, 1841, in Boston; that, while purchasing the goods of the plaintiffs, he was

asked as to the circumstances and responsibility of Cram & Hutchinson, and told the plaintiffs that he considered the firm good and responsible; that in November, 1841, he agreed with Howe to act as clerk in the store of Cram & Hutchinson during the ensuing winter, and did so act for a few weeks, and until he was obliged, by other business, to leave; that he continued to reside in the same village until the March following; that he never heard a suggestion that John Hutchinson, 2d, was one of the firm, until after the failure of the firm, when he heard, at Corinth, where he then resided, that Nathaniel Hutchinson was not one of the partners, but that the firm consisted of Cram & John Hutchinson; and that he could not recollect that he was ever informed by Howe, Cram, Nathaniel Hutchinson, or John Hutchinson, who constituted the firm of Cram & Hutchinson, but that he " came to the conclusion from the remarks of townsmen and his knowledge of the circumstances of Nathaniel Hutchinson, and John Hutchinson, 2d." To the admission of this deposition the defendants also objected; but the objection was overruled by the court, and the deposition was admitted.

The plaintiffs also introduced evidence tending to prove that Nathaniel Hutchinson, from September, 1841, to June, 1842, owned and occupied a large farm in Braintree, and was also the owner of a valuable tavern stand, and that the said John Hutchinson was twenty two years old in August, 1841, and did not profess to be worth property to any amount.

The defendants requested the court to instruct the jury, that, if they found that Nathaniel Hutchinson was not the partner of Cram, but that the partner was John Hutchinson, the plaintiffs could not recover; and that, if they should find John Hutchinson was the partner with Cram, although they should also find that Nathaniel Hutchinson represented himself to the plaintiffs as such partner, the plaintiffs could not recover in this action, as, in that case, John Hutchinson was jointly liable with Cram and Nathaniel Hutchinson, and should have been joined as defendant; and that, as he was not joined, there was a variance between the proof and the declaration.

But the court refused to instruct the jury as requested, but did instruct them, that the plaintiffs would be entitled to recover of the defendants for the amount of such goods as were delivered to the

credit of Cram & Hutchinson upon the representation of Nathaniel Hutchinson that he was the partner of Cram, though the jury should in fact find that the said Nathaniel was not the partner of Cram, and never had any interest in the concern, but that the real partner of Cram was John Hutchinson.

The jury returned a verdict for the plaintiffs. Exceptions by defendants.

*J. P. Kidder*, *L. B. Peck* and *L. B. Vilas* for defendants.

1. The deposition of Henry A. Reed ought not to have been admitted. It was admitted to affect the rights of Nathaniel Hutchinson, when it only tends to show what Cram said without the knowledge, or authority, of Hutchinson ?

2. The deposition of John Preston is clearly inadmissible. It is almost wholly hearsay testimony. The witness says that the defendant Hutchinson affirmed all that Howe had previously stated. Can any authority be found for testimony of this character.

3. There is not a word in the whole deposition of John M. Lyman, that can be regarded as legal testimony in this case; but still it might affect the case materially with the jury. It, in effect, gives the opinion of the witness, that Nathaniel was the partner, but that "he came to the conclusion," not from any legitimate source, but "from the remarks of townsmen and his knowledge of *the circumstances* of Nathaniel Hutchinson and John Hutchinson 2d."

4. The defendants were entitled to the charge requested. The defence was, that the firm consisted of Cram & John Hutchinson, 2d, and that Nathaniel Hutchinson never was a partner; so that it was not necessary to plead in abatement the nonjoinder of John;—and, having established that fact, the defence was complete. But the court charged the jury, that, if this was so, yet, if Nathaniel represented himself as a partner, the plaintiff must recover. If the firm consisted of Cram & John Hutchinson, how could Cram be adjudged the partner of another without his knowledge, or consent? for there is no pretence that Cram knew or consented to any such representations of Nathaniel. The true doctrine is, in holding a person, who is not in fact a partner, all the known partners must be sued, and then those who have held themselves out to the world as such may be held liable with them; but it is believed that no case can be

found, where a pretended partner has been substituted for the real one.

*E. Weston* and *W. Nutting* for plaintiffs.

1. The plaintiffs contend that the charge of the county court was correct. Collyer on Part. 421 *et seq. Stearns* v. *Haven et al.,* 14 Vt. 540. The non-joinder of John Hutchinson could not be taken advantage of, even by plea in abatement, if the plaintiffs did not know that he was a partner, and trusted the defendants only. *Baldney* v. *Ritchie,* 2 E. C. L. 416. *Stansfield* v. *Levy,* 14 E. C. L. 146. 1 Chit. Pl. 30–32.

2. The testimony, relative to what Cram told the plaintiffs in May, 1842, was rightly admitted to rebut any presumption of notice, which might arise from what was said in the plaintiffs' store in December, 1841 ; and the deposition of Reed was offered and admitted for no other purpose.

3. The other depositions were proper testimony in the case.

The opinion of the court was delivered by

REDFIELD, J. The only point in dispute in this case, before the jury, seems to have been, whether the firm of Cram & Hutchinson consisted of Cram and Nathaniel Hutchinson, or of Cram and John Hutchinson. The suit being brought against Cram and Nathaniel Hutchinson, the effort of the plaintiffs was, to make proof of his liability, both on account of the costs, which would be lost in bringing a new suit, and also from the fact that Nathaniel Hutchinson was responsible,—Cram and John Hutchinson being understood to be insolvent.

1. We think the court decided correctly in regard to the effect of Nathaniel Hutchinson's representing himself to be the partner of Cram,—and especially to the plaintiffs,—that it was sufficient to make him liable as partner, if the credit were given to the defendants under the expectation that Nathaniel Hutchinson was one of the firm, at the time the credit was given. This is the kind of evidence usually resorted to by third persons, to prove a partnership, and all that ordinarily can be shown by them. It is the representing one's self, or suffering one's self to be represented, as a partner, that creates a liability to third persons ; and this is sufficient to create a

liability, notwithstanding the truth should prove to be, that the person, so suffering himself to be held out as partner, in fact was not so. This is in order to preserve good faith and prevent fraud, and is almost the only ground of an estoppel *in pais*. If one man has made a representation, which he expects another may, or will, act upon, and the other does in fact act upon it, he is estopped to deny the truth of the representation. So, too, equally, when one remains silent and suffers another to make the representation. In a recent English case,—*Sanderson* v. *Collman*, 43 E. C. L. 115,—it was held, that, under the new rules of pleading there, estoppels *in pais* may be pleaded specially. That is not necessary, and not usual in our practice, and could not conveniently be done in most cases.

2. The second point, made in the case, is, that, notwithstanding these representations, if John Hutchinson was in fact the partner, no recovery can be had in this suit. But the court do not consider this position well founded. Notwithstanding the firm in fact consisted of Cram and John Hutchinson, Nathaniel, by representing himself to be a partner, became liable for such debts as they contracted on their own and his credit jointly. The suit, then, being brought against two, only, of three joint contractors is no ground of defence on trial, and would not be good ground for abating the suit, if the plaintiffs were ignorant of the liability of John Hutchinson,— as if he had been a silent partner, or if the fact of his liability had been kept from the plaintiffs by Cram and Nathaniel Hutchinson.

3. In regard to the depositions,—1. That of Preston is well enough. It states that Howe asserted to another firm in Boston, that the firm of Cram & Hutchinson consisted of Cram and Nathaniel Hutchinson, and that they had agreed to assume the debts of one Loomis to that firm. Nathaniel Hutchinson was afterwards introduced, at the store of that firm, to this deponent, he being their salesman, " and affirmed all that Howe had previously stated," and authorized that firm to charge Loomis' debt to them. This is sufficiently definite. It must mean, either that Nathaniel Hutchinson re-asserted identically the same things that Howe asserted, or that he expressly assented to their truth.

2. The deposition of Reed, that, at the time Cram took up the last bill of goods, he asserted that Nathaniel Hutchinson was his partner, might have been competent evidence, to show that the

plaintiffs delivered the goods upon the credit of Cram and Nathaniel Hutchinson, and to rebut the defendants' evidence, that they were in fact purchased upon the credit of Cram and John Hutchinson,—there being already sufficient evidence in the case to justify Cram in thus pledging the credit of Nathaniel Hutchinson, if he chose to do it.

3. There is more difficulty in regard to the deposition of Lyman. This deposition was objected to generally, and admitted. This decision of the court, upon the most favorable construction, must be considered equivalent to saying, that the deposition contained *some* evidence, competent to be weighed by the jury; and as no part of it seems to have been excluded from the consideration of the jury, the natural conclusion would be, that the jury would consider it all competent evidence.

The evidence of this witness, so far as it affects the main point in the case, seems to have been altogether hearsay, or common reputation in the neighorhood,—neither of which is competent to prove the *fact* of a copartnership. 1. The witness states minutely his intimacy with the business of the firm for many months, without saying that he knew which of the Hutchinsons was the partner,—which he could easily have done, if such had been the fact. 2. That, being inquired of by the plaintiffs, he told them *he considered* the defendants perfectly responsible,—which is, doubtless, understood by all as equivalent to an assertion that *he considered* Nathaniel Hutchinson the partner;—but why so? That is left to conjecture. 3. That he never heard a suggestion that John Hutchinson was the partner,—which is equivalent to saying that *every body considered* that Nathaniel Hutchinson was the partner,—until the witness left for Corinth. 4. He was never told by either of the Hutchinsons, or Cram, or Howe, who constituted the firm, but he founded his opinion upon "*the remarks of townsmen and his knowledge of the circumstances of the Hutchinsons.* This testimony was clearly incompetent, and very well calculated to mislead the jury.

Judgment reversed, and new trial.