# Eugene P. Couture v. Fred Lowery et al

[ 168 A.2d 295 ]

January Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 1, 1961

*Finn & Davis* for the plaintiff.

*Abare & Sargent* for the defendants.

**Shangraw, J.** This is a suit in equity for specific performance brought by the plaintiff to compel the defendants to transfer title to a farm owned by them located in the town of Barre, Vermont. After hearing findings of fact were filed and a decree made ordering the defendants to convey title to the farm. Exceptions to the admission of evidence and exhibits were taken and allowed the defendants, as were exceptions to the findings of fact and the judgment order. Notice of appeal was duly filed.

The bill of complaint sets forth that the defendants owned a farm consisting of 365 acres, more or less, describing the same, in the town of Barre, Vermont, and advertised that the property would be sold by their agent at public auction to the highest bidder on August 8, 1959. The farm was bid off by the plaintiff at the auction for $10,800, he being the highest bidder. It is alleged that in accordance with the terms of the sale plaintiff tendered ten percent of the above purchase price which was refused by the defendants, who have since declined to convey the farm to the plaintiff. Plaintiff stands ready to consumate the deal.

The answer of the defendants in substance alleges that the advertising material contained the provision that the terms of the sale would be for "cash." Certain personal property was first sold at the auction. When the auction of the real estate was about to take place it was announced by Willis Hicks, the auctioneer, that a required down payment of not less than 10% would be required by the buyer before leaving the premises. A tender of 10% of the purchase price of the farm was not made by the plaintiff to the defendants until August 10, 1959, which the defendants refused to accept. The defendants allege that no agreement was entered into in writing between the plaintiff and the defendants for the sale of the land as required by the statute. The defendants further answer by stating that no person on their behalf was authorized in writing to sell the real estate and personal property at the auction other than for cash, and further that no person on their behalf had authority, orally or in writing, to waive the cash requirement for the 10% down payment by the highest bidder for the farm before leaving the premises. It is further alleged that the plaintiff has never made the payment as required by the terms of the sale; has never done or performed any act in betterment of the defendants' premises; has never had possession, nor possessed any writing binding

the parties; and has failed to comply in whole or in part with the Statute of Frauds. No replication was filed by the plaintiff.

The chancellor found these facts. The real estate in question, together with cattle, farm machinery, and household goods were advertised in the Barre Daily Times, other papers, and by posters and radio, to be sold at public auction by Willis Hicks, auctioneer, on August 8, 1959, "TERMS: CASH." At the beginning of the auction the auctioneer announced that the terms of the sale were cash, except on larger items it would be 10% down and the balance when the item was picked up, unless other arrangements were made to Mr. and Mrs. Lowery's satisfaction. All personal property was sold except minor items of household furniture. Following the sale of the personal property, and in describing the farm and announcing the sale of the real estate, the auctioneer specifically stated that the terms were 10% on day of auction and the balance upon the passage of the deed, unless other arrangements were made with Mr. and Mrs. Lowery. The farm was bid off by the plaintiff at $10,800, following which the plaintiff went into the house and was told by Mrs. Lowery "* * * that he had bought a good farm cheap." Following the sale of the farm, plaintiff's name was inserted by the auctioneer's bookkeeper on a sheet, original and one copy, in a sales book, Pl. Ex. 3, with the following entry, "farm 10,800-."

The sale took place on Saturday, August 8, 1959, and immediately after the farm was struck off the plaintiff called Mr. Lowery's attention to the fact that the banks were closed and it was agreed by Mr. Lowery that the down payment of 10% might be paid on Monday, August 10th. At all times Mr. Lowery had the consent of Mrs. Lowery to make any arrangements concerning the auction as he saw fit. The auctioneer had contracted for this sale on a 5% commission basis and following completion of the day's auction the amount of the total sales was computed by the auctioneer and his clerk and a settlement made with Mr. and Mrs. Lowery, Pl. Ex. 1. At this time Mr. Lowery told the auctioneer that he was not selling the farm. A 5% commission on the sale of the farm was charged by Mr. Hicks and deducted from the cash proceeds received by him. The chancellor was unable to find that there was any objection to the payment of the commission on the farm, but if there was any objection made, "* * * it was overruled by the auctioneer, * * *." On Monday, August 10th, plaintiff tendered to the

defendants a bank's registered check, representing 10% of the purchase price of the farm, which Mr. and Mrs. Lowery refused to accept. No writing was ever signed by the parties covering this transaction.

The principal question presented by the defendants in their brief is whether or not the Statute of Frauds is controlling under the facts as found by the chancellor. The defendants claim that the alleged sale is one for the sale of land, and the facts as found by the chancellor fail to disclose a compliance with the Statute. This section of the Statute relied upon is 12 V.S.A. §181 which, in so far as here applicable, is as follows: "An action at law or in equity shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memordandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Sub-section (5) of section 181 reads: "A contract for the sale of land, tenements or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing."

The plaintiff concedes that the Statute of Frauds requires that an authorization to sell real estate must be in writing. He claims however that the defendants waived this requirement and ratified the sale of the farm. We start off with the unquestioned facts that Mr. Hicks was verbally authorized by the defendants to sell the farm at public auction on August 8, 1959 and that the same was struck off to the plaintiff as the highest bidder. No writing covering the purported sale was signed by either the plaintiff or defendants, nor did the auctioneer have written authority from the defendants to make the sale. No memorandum of sale was signed by the auctioneer. There was no delivery of the sales slip nor was an entry made in the sales book, Pl. Ex. 3, by the auctioneer's clerk. The defendants have continued in possession of the premises.

The defendants first assign error on the part of chancellor to the reception in evidence of plaintiff's exhibits Nos. 1, 3 and 4. No. 1 is a sheet reflecting the total auction sales, cash and receivable, less the auctioneer's commission of 5% deducted from the cash receipts. No. 3 is the auctioneer's sales book containing entry therein relating to the farm which we have already referred to in this opinion. No.

4 is a more detailed statement showing the sale price of the farm, cows, tools and furniture, a total of $25,418.10. Contained in this statement is a list of accounts receivable, a total of $15,501, which includes the bid price of the farm. All of these exhibits were made by Mr. Hicks' clerk. None were signed by the auctioneer or any of the parties to this litigation. Timely objection was made by the defendants to the admission of these exhibits, counsel urging that the Statute of Frauds was applicable in cases of a sale of real estate by auction and must be complied with. It is apparent from the record that the defendants made known to the chancellor their position and claim that the Statute of Frauds was applicable here. By this action, and by exceptions taken to the admission of these exhibits, the question of the effect of the statute was properly saved and raised below. 12 V.S.A. §2381. The position and claim of the defendants was acknowledged by the chancellor during the hearing who took the view that the statute did not apply to an auction of real estate, and a decree for the plaintiff was entered accordingly.

The provisions of the Statute of Frauds applicable to contracts affecting interests in land were adopted for the purpose of preventing existing estates in land from being upset by parol evidence, and their general effect is to require all contracts concerning real estate to be in writing. 49 Am. Jur. Statute of Frauds, §149, p. 490; *Pond* v. *Sheean,* 132 Ill. 312, 23 N.E. 1018, 1020, 8 L.R.A. 414. Its purpose is to serve as a shield against possible fraud. Our statute, 12 V.S.A. §181, provides the mode and means by which an agent shall receive authority to make a contract or agreement relating to the sale of lands, etc., and he cannot be authorized by any other mode, unless the statute is waived. That the benefit of the Statute of Frauds may be waived is well established. *Dunbar* v. *Farnum,* 109 Vt. 313, 322, 196 A. 237, 114 A.L.R. 996. *Taplin* v. *Hinckley Fibre Co.,* 97 *Vt.* 184, 187, 122 A. 426. One may admit the sale of land by a verbal contract, and yet defend an action for specific performance by pleading the statute. 49 Am. Jur. §605, pages 912, 913; *Cornett* v. *Clere,* 193 Ky. 590, 236 S.W. 1036, 22 A.L.R. 720. The defendants admit that Mr. Hicks was verbally authorized to auction off the farm upon certain conditions, however, by their answer and during trial they insisted upon the protection of the statute.

 Present-day authorities universally agree that sales by auction, unless expressly exempted, are within the provisions of the Statute of Frauds. 5 Am. Jur. Auctions, §28, p. 465, and cases cited. *Brey* v. *Tvedt,* 74 N. D. 192, 198, 21 N.W.2d 49. We have no exempting statute relating to sales of privately owned real estate at a public auction of this character. 9 V.S.A. §1521 is limited to a sale of goods by auction, and does not apply to a sale of real estate. The authority given by the defendants to the auctioneer to sell the farm was not in writing as required by 12 V.S.A. §181. In order to hold the defendants to specific performance of the agreement to convey, they must either have personally signed a written agreement to sell the farm, or have duly authorized in writing an agent to sign for them. No such writing appears. *Dunbar* v. *Farnum, supra,* 319. The road-block to plaintiff's right of recovery is found in 12 V.S.A. §181, and in this respect the agreement fails when challenged, as here, by this statute.

It is earnestly urged by the plaintiff that the defendants waived the benefit of the Statute of Frauds and ratified the sale of the farm by the auctioneer. We do not concur with the plaintiff in the assertion that the Statute was waived. It is apparent from the record that the Statute was pleaded by the defendants, and that objection was made to the admission of plaintiff's exhibits, Nos. 1, 3 and 4, which exhibits were made by the auctioneer's clerk and not signed by Mr. Hicks or the clerk.

 Heretofore, the Statute of Frauds could be availed of by a seasonable objection without it being specially pleaded. *Taplin* v. *Hinckley Fibre Co., supra,* p. 187. *LaPlante* v. *Eastman,* 118 Vt. 220, 227, 228, 105 A.2d 265. Under 12 V.S.A. §1024, the Statute of Frauds is now an affirmative defense and must be specially pleaded. This defense is no longer available as a rule of evidence. When once asserted as a matter of defense the plea or answer then becomes inconsistent with the idea of waiver. The purpose of 12 V.S.A. §1024, which was derived from Rule 8 (c) of Federal Rules of Civil Procedure, requiring that the Statute be pleaded, is to prevent surprise. By virtue of this statute the burden is cast upon the pleader to give fair notice of his affirmative defense to the opposite party. In this case the defendants did not remain silent. By appropriate pleading

they spoke when the Statute required them to do so. Therefore, under this statute an affirmative defense cannot be put in issue by an objection to the evidence, and it follows that mere failure to object, if the statute is pleaded, is not a waiver.

The plaintiff claims that the settlement made by the auctioneer with the defendants following the sale, and conduct of the parties, constituted a ratification of the sale. In paying the auctioneer the defendants merely compensated him for personal services performed, according to the contract of employment that prevailed between them. It did not constitute a ratification of the parol agreement which subsisted between the plaintiff and the defendants concerning the sale of the farm. Here we have a verbal agreement for the sale and purchase of real estate, without written authority having been given the auctioneer by the defendants. No memorandum of sale was signed by Mr. Hicks, nor any agreement by way of confirmation or otherwise signed by the defendants in favor of the plaintiff as purchaser. The most that can be said is that the transaction as between the plaintiff and defendants constituted an executory contract for the sale of real estate. 12 V.S.A. §181, applies to executory contracts, such as here. *Ide & Smith* v. *Stanton,* 15 Vt. 685, 689; 30 A.L.R. 1164; 49 Am. Jur. Statute of Frauds, §149, p. 490. A subsequent ratification is, of course, equivalent to prior authority. As stated in *Dunbar* v. *Farnum, supra,* at page 319, "So, too, where written authorization is required and none exists, ratification must be in writing to bind the principal."

Under the general rule of agency, the act of ratification must be of the same nature as that which would be required for conferring the authority in the first place. *Dunbar* v. *Farnum, supra,* p. 319, 49 Am. Jur. Statute of Frauds, §410, page 714. Accordingly, if an agent has oral authorization only, ratification must be in writing in such case, since such authorization, so far as the Statute is concerned, is a nullity. 49 Am. Jur. Statute of Frauds, §§170 and 410, pages 506 and 714. In view of the Statute no sufficient ratification appears.

Plaintiff urges that the memorandum, Pl. Ex. 3, is sufficient to satisfy the Statute and relies in support of his claim on *Harvey* v. *Stevens,* 43 Vt. 653. We do not, nor need we, reach the question of its sufficiency. The Harvey case, *supra,* and the case here considered are distinguishable in the following respects. The only question pre-

sented, and passed upon in the Harvey case, *supra,* was whether the memorandum *in point of substance* was sufficient. In the Harvey case, *supra,* the subject of the sale was personalty. The authority of the auctioneer in that case to make a written memorandum to bind the seller was not required to be in writing under the Statute of Frauds. Furthermore, the auctioneer's authority to act was conceded. The auction here considered involves real estate, and the statute requires that the authority of the agent must be in writing to bind the sellers. The plaintiff has failed to produce any memorandum signed by the defendants, or by anyone authorized in writing to act in their behalf.

It is apparent that the decree is not warranted by the pleadings and findings. While other claims have been advanced and briefed by the parties, our disposition of the case on the grounds stated in the opinion renders it unnecessary to consider them.

*Decree reversed. Judgment for the defendants to recover their costs.*

Note: An opinion in this case was handed down at the September Term, 1960. The plaintiff filed a motion for re-argument. This was granted and the entry withheld. The re-argument was heard at the January Term, 1961 and the opinion revised. The revision of the opinion does not change the result previously reached.